3-23-0153 consolidated with 3-23-0305. Erica LaForte, GAPLI v. Expedia, Inc., Appellant. Thank you. Good morning. Good morning, Your Honor. Good morning. Mr. Jenikin, are you ready? I am. You may begin. May it please the Court. My name is Spencer Jenikin and I am here today representing Defendant Appellant Expedia, Inc. Expedia is a third-party travel website that allows hotel suppliers to list and advertise available rooms connecting interested travelers with the hotel suppliers and provides a platform to view and compare a number of options before booking a reservation with the hotel supplier through Expedia. An agreement by A to not hold B liable for C's willful misconduct does not violate public policy. Since Erica LaForte improperly brought suit against Expedia for representations made by a hotel supplier on Expedia's website, plaintiff testified that she made bookings through Expedia over a hundred times, each of which were subject to Expedia's terms of use. Expedia's terms contain a liability disclaimer disclaiming Expedia for the acts, errors, omissions, and representations made by hotel suppliers on its information about the hotel that's on its website. Expedia has a portal or communicates with the hotel and the hotel is in sole discretion of modifying the chain of cancellation policies published. So Expedia doesn't have any access to the items or the listings of the policies. All they can do is just, you know, if the hotel suppliers have a change, then they can make that change. So the policy comes from the hotel, it came from Hilton? Correct. Okay, and do you know if that's the correct policy? So at the time of the booking, when Expedia representative contacted Hilton, they represented that it was an incorrect booking when Expedia contacted them to try to get the refund on behalf of plaintiff. And how did it differ? The defendant or the representative from Hilton stated that it was a non-refundable room which defender with which Expedia's representative represented to plaintiff after the request or the refund request was denied. And do you happen to know when the change was made? Expedia does not know when that change was made. Okay, thank you. Mr. Genachey, is that in the record? Is which part in the record? That Hilton informed them that the policy had changed? It is not in the record or that Hilton informed the defendant that the policy had changed? Yes, your client. I don't believe it's in the record as it stands. However, I believe Ms. Libera testified to the fact that an Expedia representative contacted them and Hilton notified the representative that it was no longer refundable. However, the actual communication like email or phone calls are not contained in the record. But you believe, that's not my recollection, but you believe that it's in her testimony? I believe so, yes. Okay, thank you. This court's standard of review analyzes the record to determine whether the trial court's findings are against the manifest weight of evidence. Here, this court should reverse the circuit court's finding in favor of plaintiff and enter judgment in favor of Expedia for three separate reasons. First, plaintiff agreed to the terms and is thereby bound by the terms and the liability disclaimer contained therein. Second, Expedia certainly did not act knowingly or with reckless disregard when publishing the hotel supplier's change and cancellation policy. And third, Expedia's conduct does not warrant punitive damages. First, plaintiff agreed to Expedia's terms when making the booking in question, which contains a liability disclaimer that states, the Expedia companies and the Expedia partners are not liable for the acts, errors, omissions, representations, warranties, breaches, or negligence of any such supplier, and the Expedia companies and Expedia partners have no liability and will make no refund in the causes beyond their control, direct control. In Ambrosius versus Chicago Athletic Clubs, the court held that when an individual manifests assent to the terms available at a hyperlink, the assenting individual is bound by the terms therein. There, plaintiffs allege that they were not bound to the terms of service and that they did not have actual or constructive knowledge of terms because they were available at a hyperlink. The court reasoned that it didn't matter whether plaintiffs read the terms and that by manifesting assent to them, they were nonetheless bound by and provided ample intra and interstate case law to support their holding. Here, there is no question that plaintiff is bound by Expedia's terms and even agreed that it was on her, the consumer, to read and understand Expedia's terms of use before completing a booking and that she had failed to do so when making the booking at issue. Under Illinois law, it does not matter whether plaintiff read Expedia's terms and is nonetheless bound by Expedia's terms containing the liability disclaimer. Expedia has hundreds of thousands, if not millions, of hotel suppliers that publish their policies on its website. To hold Expedia liable each time a hotel supplier fails to update their change of cancellation policy would result in a chilling of business for companies like Expedia to conduct business within the state of Illinois. Further, for the first time on appeal, plaintiff argues that Expedia's liability disclaimer cannot be enforced because it attempts to shield Expedia from plaintiff's common law fraud claim. Expedia maintains that plaintiff forfeited making this argument by omitting it at trial, but nevertheless, plaintiff proceeds to outline insight to a number of cases that are fundamentally different than the issue here, which is, is Expedia's liability disclaimer contained in its terms of use against public policy because it allegedly shields Expedia from plaintiff's common law fraud claim? The answer is simple. No. Expedia's liability disclaimer does not exculpate Expedia for its own fraudulent conduct, but rather shields Expedia from liability arising out of the conduct of third-party hotel suppliers. The liability disclaimer is clear. Expedia is responsible for the acts, errors, omissions, representations, warranties, breaches, or negligence of any such supplier. All parties in this matter acknowledge and agree that the change of cancellation policy published on Expedia's website was that of the hotel supplier, not Expedia. Therefore, Expedia's liability disclaimer contained in its terms of use does not violate public policy, and plaintiff agreed to Expedia's terms of use when completing her booking. For the second reason, Expedia did not act knowingly or with reckless disregard when publishing the hotel supplier's change in cancellation policy. Plaintiff fails to cite to any evidence contained in the record to show that Expedia acted with knowledge, reckless disregard, or culpable ignorance as to the truth or falsity of any statements made by the hotel supplier with regards to plaintiff's booking. In Park v. Soane, the Supreme Court of Illinois upheld reversal as to plaintiff's fraud claim, and there, the defendant built and sold a home to plaintiffs who, after purchase, uncovered a number of defects in the construction and septic system of the home. The only statement made by defendants regarding the septic system was that defendants had never had any major problems with it. The court reasoned that there was no evidence that the defendant made any representation of the plaintiffs that they knew to be false, nor was there evidence that they knowingly concealed defects from the plaintiff. Rather, plaintiffs point to Oryx Credit Alliance v. Taylor Machine Works to argue that Expedia acted with reckless disregard for the truth or falsity of its representations. However, plaintiffs entirely failed to actually a representative from defendant's company provided a signed and titled letterhead to a third-party appraiser after a series of communication with the appraiser, fully knowing that the appraiser would use the letterhead to forward appraisals of equipment to plaintiff and like entities. Defendant's representative failed to check the accuracy of the information contained in the letters before they were sent to plaintiffs, and the court reasoned that this behavior constituted reckless disregard as to the truth or falsity of the statements contained in the appraisals. Here, the facts in the record warn a much different outcome. Plaintiff knew that the change in cancellation policy was that of the hotel supplier, not Expedia, and agreed to the terms of use containing Expedia's liability disclaimer. However, plaintiff urges this court to find that Expedia was in a superior position to determine the truth or falsity of the hotel supplier's policy. Plaintiff utterly failed to point to a single piece of evidence to suggest that Expedia was in such a superior position. As stated previously, Expedia connects hundreds of thousands, if not millions, of hotel suppliers and travelers on a daily basis, with each hotel supplier altering their policies regularly. In fact, Expedia's terms make clear that Expedia is not in a superior position to verify the accuracy of each hotel supplier's policy. Plaintiff uses baseless, unsupported assumptions that were not addressed by the trial court to argue that Expedia was in a superior position to determine the accuracy of the hotel supplier's policy. To hold Expedia liable to review and confirm the accuracy of each hotel supplier's cancellation policy listed on its website would overwhelmingly call other businesses similar to Expedia from conducting business within Illinois and dissuade potential new businesses from conducting business within the state. Therefore, Expedia did not act knowingly with reckless disregard or culpable ignorance as to the truth of the hotel supplier's change of cancellation policy on Expedia's website and was not in a superior position to determine the truth of the hotel supplier's policy. Third and final, Expedia's conduct certainly does not warrant a finding of punitive damages. In Illinois, punitive damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully or with such gross negligence as to indicate a wanton disregard of the rights of others. Punitive damages further serve dual purposes of retribution against the wrongdoer and deterrence of similar conduct by that party and others. While attorney's fees can be considered when awarding punitive damages. Finally, in Kouperos versus Morton, this court took a three-step approach when reviewing the trial court's decision to award punitive damages. First, whether punitive damages are available for the particular cause of action using a de novo standard. Second, whether under a manifest way of evidence standard the defendant acted fraudulently, maliciously, or in a manner that warrants such damages. And third, whether the trial court abused its discretion in imposing but it does not apply to the facts here. Expedia expressly disclaimed liability for the acts, errors, omissions, and representations made on its website by third-party hotel suppliers, and Expedia does not control what the hotel suppliers publish on its website. Second, both Expedia and Plaintiff understood the change in cancellation policy to be that of the hotel supplier, not Expedia, and after changing and inevitably canceling her reservation, Expedia worked with Plaintiff to request a refund from the hotel only for it to be denied by the hotel supplier. Looking at the facts, Expedia's conduct does not satisfy the elements of fraud and therefore cannot support an award of punitive damages under the first Kouperos step. Second, as discussed, Expedia did not act fraudulently when publishing the hotel supplier's policy. In fact, Expedia worked alongside Plaintiff to help her obtain a refund from the third-party hotel supplier. Expedia did not act with fraud, malice, or in any court most definitely abused its discretion when awarding punitive damages. The general rule in Illinois is that in the absence of a statute or an agreement, the successful litigant in a civil action may not recover attorney's fees or the ordinary expenses of litigation from their adversary. Further, in International Union of Operating Engineers versus Lowe, the Supreme Court of Illinois stated that while attorney's fees can be considered when awarding punitive damages, they should not be awarded under the guise of punitive damages. Here, the trial court stated that Expedia took Plaintiff's money with speed and efficiency, but there were numerous phone calls over multiple days, and Expedia stated it did not know what happened to Plaintiff's reservation funds. This is an utter mischaracterization of the facts in the record. First, Jamie LaBaer testified at trial the steps one has to take before completing a booking, including searching for lodging options, reviewing the details, and reading and accepting Expedia's terms of use, all before Expedia asked for a method of payment. Second, the trial court mentions the phone calls and emails between Plaintiff and Expedia, but failed to acknowledge that the communication was in an effort to obtain Plaintiff's refund from the third-party hotel supplier. Expedia contacted the hotel supplier multiple times in an attempt to obtain a refund, and only after Expedia notified Plaintiff of the hotel supplier's denial did Plaintiff become dissatisfied with Expedia's communication. Up until that point, Plaintiff was satisfied with Expedia's conduct and attempts to obtain a refund on her behalf. Finally, LaBaer explained in detail Expedia's payment structure with a particular hotel supplier, stating that the money was uploaded onto an individual use credit card for the third-party hotel supplier. So let me interrupt you there. It was difficult to tell from the transcript whether she actually had knowledge of this. At some point, it seems like she was asserting that she looked at it and knew that that's what happened, and at other points, it seems like she was just saying that's how it's supposed to happen. But ultimately, she could not testify with any certainty that the money was put on the card and that the hotel took the money off the card, the virtual card, whatever that means. Would you agree with that? Not entirely, and our position is that Ms. LaBaer stated that they knew the funds were uploaded onto the individual use credit card. Once those funds are uploaded, Expedia does not know when or if or how the hotel takes those funds out. So once they did that, or once Expedia uploaded those funds, it's on the hotel supplier to approve Expedia to go back in and take those funds out. But once the hotel supplier denied any sort of refund, Expedia was unable to do that. So Expedia knows that they were put onto the card, but with this particular payment structure, that's the only thing they know until a refund is approved by the hotel supplier. So I often lose gift cards when I receive those for whatever reason. Is this the analogy? The gift card was given to the other side, and the other side's, I don't have it, I don't know. We just lose track of everything at that point in time? Is that what the testimony tells us? I wouldn't say lose track. They know it's been provided to the hotel supplier. But more or less, the analogy would be accurate with regards to the gift card. Thank you. After mischaracterizing material facts in the record, the trial court awarded punitive damages in the amount of attorney's fees and costs. The trial court expressly awarded attorney's fees under the guise of punitive damages, which is prohibited under Lowe, and this is evidenced by solely taking into consideration attorney's fees when awarding punitive damages. Further, the amount in punitive damages here is nearly five times the amount at issue. Each step in Caparo's three-step approach when reviewing the trial court's decision to award punitive damages supports reversal. For these reasons, the trial court's decision to award punitive damages should be reversed. As I've stated, an agreement by A to not hold B liable for C's willful misconduct does not violate public policy. Accordingly, excuse me, I saw that the time is finished. You can finish your sentence. Accordingly, Expedia respectfully requests that this court reverse the trial court's findings and enter judgment in favor of Expedia. Thank you. Thank you. Mr. Hickey, good morning. Good morning, Your Honor. My name is Timothy Hickey, and I represent the FLE, the plaintiff in the trial court, Erica Laforte, and I would first just like to address a couple of the factual issues that the counsel raised a few minutes ago. The first being that when Mrs. Laforte contacted Hilton, I don't believe that the counsel was correct when he states that Hilton advised that no, the reservation was never refundable, and that it was a mistake. Instead, I believe the record reflects that the plaintiff testified that Hilton told her that they had not received the funds for the reservation, and the plaintiff, in fact, because of that, needed to go and get the refund from Expedia because Expedia still had those funds. Could you say where in the record that appears, Mr. Hickey? All right. Yes, Judge, I think I can pull that out here. Okay. I believe, Judge, it's where the plaintiff was testifying that she did have, here we go, let's see, at page 26, the defendant testified over numerous calls and emails on multiple days that she was given the runaround when attempting to obtain her refund, and I believe that site is actually to the trial court's findings based on the testimony. Okay. Thank you. And another argument from counsel that I would like to address is he stated that the plaintiff in this case failed or waived an argument in the trial court, and I would just point out that as the appellee, the waiver of arguments in the trial court should not apply because the appellate court can affirm the trial court based on any argument or any expressly argued in the trial court by the appellee or even whether it was expressly stated by the trial judge. Regarding the issue of superior knowledge, we believe that it's important to note that Expedia did, in fact, have superior knowledge in that they dealt with the hotel directly. The plaintiff appellee did not deal with the hotel directly in making the reservation, but certainly Expedia with Hilton and that particular Hilton hotel had the direct contract, the direct contacts, the direct privity, and often would be paying that hotel directly, so have the contact with that hotel, and Expedia is the entity that placed that refundable information on the website and on the confirmation email that Mrs. Laforte received, and Mrs. Laforte also testified that she even restricted her searches on the Expedia website to only those hotels with refundable policies, so I don't think it's correct to place the burden on Mrs. Laforte when she is not dealing directly with the hotel where Expedia is, and Mrs. Laforte was reasonably relying on both the restricted search on the Expedia website and the information on the Expedia website that the reservation was refundable, and then later on in the email confirmation, I don't think it's reasonable to then impose the burden upon her to truly is correct, and I think it's also important that the disclaimer language applied in the middle of a 16-page terms of use agreement, so from a consumer's perspective, what they see based on a refundable search, a refundable statement on the website, and a refundable confirmation email, I don't think even though she did click that she agreed to the terms of use, I don't think those terms of use provisions negate the statements or excuse Expedia's conduct, and in a broader sense with the exculpatory clause, if you read the express terms of it, it applies to the acts of the hotel, and I believe the facts in this case focus at least equally on the facts of Expedia, on the acts of Expedia itself. So how do any of the facts focus on the hotel? The hotel was dismissed from the suit, and there's no hotel testimony. We don't know whether the hotel has the money or not, correct? Correct, Judge, correct, and I think that exculpatory clause would apply to any bad acts of the hotel. If the hotel said, yes, we have the money and we choose not to return the money, or if the plaintiff had gone to the hotel and slipped on their floor, certainly those would have been acts of the hotel, which may have been able to be disclaimed under this disclaimer provision, but in this situation where we believe that the trial court found and the plaintiff testified at trial that she was told Expedia still had money. She testified she was told, yes, she was told by one story by one side, one story by the other side, and you're arguing that this amounts to fraud. Well, Judge, and we're also arguing that when the plaintiff spoke directly to Expedia and Expedia said, no, you have to get your money back from the hotel because they have the money. That statement by Expedia was made with reckless disregard because even at the trial date, Expedia's witness could not say with any certainty whether the hotel had in fact been paid by Expedia, and I think it's clear that the trial judge determined when he was determining the facts, evaluating the live testimony, he believed that Expedia either did not pay the hotel or Expedia did not know whether they paid the hotel. So their statement to the plaintiff that no, Expedia will not refund your money because the hotel has your money and the hotel needs to refund it. We believe that statement was made with reckless disregard and that conduct was Expedia's own conduct, which is not disclaimed under that disclaimer provision because the would apply to independent acts of the hotel, not acts of Expedia, and if Expedia hadn't made those statements, if Expedia questionably had paid the hotel, the disclaimer provision might be applicable in this case, but based on the facts as the trial judge found them, certainly the trial judge found that there was no credible evidence that the hotel was paid, and the trial judge not only found clear and convincing evidence, but in his ruling, he found the evidence overwhelming. So Mr. Hickey, I don't quite understand. If Expedia put the money on a credit card and sent the credit card to the hotel, did they not pay the hotel? Does payment require the hotel to take the money off the card or just to have received the card? I think it would require, first off, I think it would require the hotel to take the money off the card, but I believe that based upon Expedia's own witness at trial, she could in fact not testify that she had personal knowledge or testify sufficiently to convince the trial judge that the card had even been sent to the hotel. Okay, thank you. And the fraud was not giving the money back. Where did the fraud begin when Expedia finally said the money is with the hotel, you have to go to the hotel to get it back? Is that the fraud? That's one part of it, Judge. I think the initial part of the fraud still comes back to posting the refundable nature of the reservation on the website, later on confirming that in the confirming email. And don't you have to have knowledge before? So they had to have knowledge that it was not refundable at the time they posted that it was refundable, and then ultimately said that it was not refundable. Judge, we believe it was posted with reckless disregard of whether that was true or not. And then later on, when the issue of the refund came up, we believe that the defendants, Expedia stated to the plaintiff, with reckless disregard, at least at that point, that the hotel had been paid when even at trial, they could not testify definitively and could not produce any documents that the trial court found to show that the hotel had in fact been paid. Thank you. And one final argument from counsel that I would like to address is the idea that the record reflects that Expedia was working with the plaintiff to get the money back from the hotel. I think it was clear from the plaintiff's testimony and the trial judge's findings based upon that testimony that the plaintiff was given the runaround by both sides, certainly, by the hotel in indicating that they weren't paid and by Expedia in telling the plaintiff that no, she needed to go to the hotel. And regarding the reliance issue, the court, again, found more than clear and convincing evidence. The court found overwhelming evidence. And even Expedia's own witness testified that she believed it was reasonable for Expedia customers looking at the website, reading that reservations are refundable to rely upon that. And the public policy argument and the reasonable witness of the reliance are intertwined, certainly. We've cited case law stating that fraud, that disclaimers are disfavored, especially in the area of an intentional tort such as fraud. We believe that this case is not limited only to the hotel's statement of whether the reservation was respondable, but also, as I've mentioned, Expedia's follow-up acts and conduct in addressing whether they had, in fact, paid the hotel and whether Expedia would refund the money. And as to the punitive damages, the amount of the punitive damages was $7,822. Certainly, the amounts were not excessive for a case that went to trial or for a defendant such as Expedia. And the trial judge relied on the fact that even at the trial itself with Expedia's in-person witness, they could not produce any documents to show that this card had, that this virtual credit card had been created, that the money had been taken from this virtual credit card, that it had even been given to the hotel. There was no testimony of either from documents or personal knowledge that the hotel had, in fact, been paid. And also, we believe that the punitive damages are especially appropriate in this situation, where, as the court noted, the plaintiff was given the runaround by Expedia, certainly, and where the trial court did not believe that the payment was made to the hotel and, in fact, found that, at the very least, Expedia did not know whether the payment had been made to the hotel. And with regard... Mr. Hickey, I think your time is up, but I do have some questions, Justice, if that is appropriate. So your original small claims complaint included a count, or excuse me, a theory of both breach of contract and fraudulent inducement. I don't believe that there was any amended complaints filed. Would you agree with that first statement, no amendments, Mr. Hickey? That's correct, Your Honor. Would you also agree that you basically abandoned your breach of contract claim based on the record? I know that counsel at trial asked for both common law fraud and some theory under a consumer action fraud, but never talked about any contract claim. Would I... Judge, I would agree that the focus at trial was on the common law fraud claim. I do not believe that we ever affirmatively abandoned the breach of contract. You'd like to have that avenue open based on the fact that it was part of the record? Yes, Your Honor. Nothing further? Justice Peterson? Are there any other questions for Mr. Hickey? Thank you, Mr. Hickey. Thank you very much. Mr. Jenikin, is there any rebuttal? Yes, Your Honor. First, I would like to reference the two statements that were allegedly made with disregard to the truth or falsity. The first being the policy. To prove a fraud claim, it has to be a statement made by the party that is being accused. And in this situation, plaintiff expressly stated at trial that she knew the change of cancellation policy to be that of the third party hotel supplier, but however, is now trying to accuse Expedia of making that statement. Plaintiff failed to cite to a single piece of evidence or case law that suggests that merely publishing a hotel supplier statement that in turn the plaintiff knew was that of the hotel supplier would constitute fraud on behalf of Expedia. And secondly, they're making statements regarding the hotel. However, the hotel was dismissed very early on, and Expedia had no opportunity to confront any of the statements made by the hotel. And secondly, the other statement that was made with regards to Expedia's representative stating that the hotel or the change of cancellation policy was non-refundable. With regards to that, along with fraud, a statement made with fraud, the plaintiff has to reasonably rely on that statement. This statement was made months after the final booking was finished, and therefore now they cannot claim that they relied upon the statements made when attempting to obtain a refund when making her booking, which is expressly what is pled in the original complaint. Secondly, from there, with regards to superior knowledge, Expedia stated, pardon, counsel stated that Expedia dealt directly with a hotel. But as I've stated, Expedia works with hundreds of thousands, if not millions of hotels. The Hilton Boston Back Bay is a single hotel supplier that utilizes Expedia's website. Therefore, in, you know, when looking at this case, Insular, Expedia did work with that hotel, but Expedia worked with hundreds of thousands of other hotels on a regular basis, working to make sure that people like plaintiffs can either obtain a refund or requesting those refunds on behalf of individuals like plaintiff. And the terms of use expressly say that Expedia is not liable for the acts, errors, omissions, and representations made by the hotel suppliers. Plaintiff knew that the change of cancellation policy was a representation made by the hotel supplier, and plaintiff agreed to the terms of use. Whether or not she expressly read them, it doesn't matter in Illinois. She still agrees to the terms of use and is thereby bound by the liability disclaimer, which disclaims Expedia from any liability arising out of the representations made by the hotel supplier. Secondly, or lastly, pardon, as to the breach of contract claim, Expedia was unable to present any evidence regarding this. Furthermore, under the, at trial, the trial judge expressly stated that he was not going to go to trial. That was not a viable option. So plaintiff's only option of recovery here would be the common law fraud claim. One, because plaintiff or the trial judge refused to allow the consumer fraud claim to be heard. And secondly, Expedia was not given the proper opportunity to present any evidence on the breach of contract claim trial. Counsel, why do you say that? That you were not given the opportunity to present any evidence on breach of contract. It was in the response that it just wasn't argued. So you didn't have to bring up any evidence of that. Well, it wasn't argued. And on top of that, it was never mentioned at trial. The trial judge expressly stated that the only count going forward was the common law fraud claim. And therefore, Expedia was only able to gather evidence and testimony on behalf of their defense of the common law fraud. At the trial itself, he certainly said that the only one that he would find was the common law fraud. Didn't talk about contract at all. Are you suggesting this was in an earlier hearing? He talked about the breach of contract claim being dismissed or not being proceeded upon? Either in an earlier hearing or through the conversations between plaintiff and the hotel, we were not privy to many of those conversations. So we don't know exactly when the breach of contract claim fell out, but we know that we only collected evidence and only built a defense based on common law fraud. All right. And changing gears quite a bit back to. So as you look at the page, this was introduced at trial. I can't tell you which exhibit it was when they could see 19 in the record. It shows the computer generated page change and cancellation of rules. And the second part starts out. We understand that sometimes plans fall through. It seems to me that that's language that's generated by Expedia. This is made to look like it comes from Expedia. But what you're telling us that the record supports is the content, the actual content of that cancellation policy comes from the hotel itself and that they have control of that content going into that box. Is that correct? That is correct. And to add on to that, plaintiff expressly testified at trial that she understood the change of cancellation policy listed here to be that of the hotel supplier, not Expedia. And was there any testimony in record with regard to how the hotel would do that? And they only do that once a day. Can they do it at any point in time, once a week, once a month? Mr. Bear, I believe, testified that they can do it at any point in time. Expedia is not Expedia through its terms expressly disclaims that they monitor or control those changing cancellation policies. So it's solely on the hotel suppliers to update those, whether it be daily, weekly, monthly. Expedia does not require them. They require them to update it, but they don't require them to update it on a regular basis, mainly because it's on the hotel. And then issues like this, Expedia disclaims because Expedia isn't a hotel. It's not responsible. It doesn't book rooms. It doesn't provide rooms. It doesn't do any of this. So they aren't in the market to be providing these types of policies. Thank you, Mr. Jenkins. Are there any other questions? Um, just one quick, just so we're clear. At the trial court, the contract claim was never presented by either side and the court never ruled or made any findings on the contract. So there's nothing for us to review. Is that fair assessment of that? We got off on this track and I don't know. I'm still wondering why. That is Expedia's position, Your Honor. Okay. All right. That's my only question. Mr. Janneke, I will say this. So no matter whether you win or lose this appeal, I encourage you to bill your client for every minute that you have on this case. Thank you, Your Honor. All right. They deserve to pay the attorney's fees. Um, okay. Is there anything else? So we thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.